**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-00050-001-TUC-JCH (JR) |
| Plaintiff, | **ORDER** |
| v. | |
| Eric Lawrence Moreno, | |
| Defendant. | |

Before the Court is Defendant Eric Lawrence Moreno's ("Defendant") Motion for Review of Magistrate's Order Denying Release pursuant to 18 U.S.C. §§ 3145(a)(1), 3145(a)(2), 3142(b), 3142(g), and 3145(b) (Doc. 31). Defendant appeals Magistrate Judge Jacqueline Rateau's decision to deny Defendant's request to be released pretrial to Community Bridges, a substance abuse treatment facility. (Doc. 30.) The Government opposes the Motion. (Doc. 33.) For the following reasons, the Court will deny the Motion and affirm the Detention Order (Doc. 30.)[1]

**I.  Background**

In September 2021, agents with the Department Homeland Security received information that a package intended for the Defendant was suspected to contain a sound suppressor;[2] the same package was seized on October 25, 2021. (Doc. 33 at 2.) The Bureau

---

[1] The Court finds these matters appropriate for resolution without oral argument. *See* L.R. 7.2(f).
[2] A sound suppressor, also known as a silencer, is an attachable devise that reduces the acoustic output of a gun discharge.

of Alcohol, Tobacco, Firearms, and Explosives conducted an inspection of the package and confirmed that the two suppressors in the package met the federal definitions of a "firearm" and a "firearm silencer/suppressor." (*Id.*) Because the Defendant was prohibited from possessing firearms due to past multiple felony convictions, agents obtained and executed a search warrant for Defendant's residence on December 9, 2021. (*Id.*)

During the search of Defendant's residence, agents found a Smith & Wesson model SD40VE .40 S&W caliber pistol, 38 rounds of .40 S&W caliber ammunition, 40 grams of methamphetamine, 54 grams of fentanyl packaged for sale, $1,144 in cash, three cell phones, and a small amount of heroin which appeared to be for personal use. (*Id.* at 2-3.) After waiving his *Miranda* rights, the Defendant admitted to: (1) ordering the suppressors but stated he didn't believe they were real; (2) possessing the firearms and ammunition in order to protect the drugs; (3) selling large quantities of fentanyl and methamphetamine; and (4) participating in drug trafficking activity on several occasions. (*Id.* at 3.)

Pretrial services recommended, and the Magistrate Judge ordered, detention pending trial. (*See* Doc. 4.) After the Defendant was screened for substance use treatment, he moved for reconsideration of the detention order arguing that "[a]cceptance into an inpatient treatment program is a changed circumstance meriting a reconsideration of release in this case." (Doc. 5 at 2.) Subsequently, pretrial services issued an addendum again recommending detention. (Doc. 6.) A release hearing was held on January 6, 2022, and the Defendant was released for a 90-day inpatient treatment program at Community Bridges Inc. ("CBI"). (Doc. 14 at 1.)

While on release, on February 6, 2022, the Defendant was found with 2 packs of cigarettes which are considered contraband at CBI and was consequently placed on a behavioral contract. (*Id.* at 2.) On February 17, 2022, Defendant tested positive for amphetamine/methamphetamine; Defendant initially denied substance use and later indicated that he had coffee which may have been "spiked" with a substance. (*Id.*) As a result of the Defendant's noncompliance with facility rules, CBI requested Defendant's discharge. (*Id.*) Defendant was taken into custody on the same day. (Doc. 23.) The Government petitioned to revoke pretrial release (Doc. 15) and the Defendant was ordered

detained on February 24, 2022.

The Defendant filed a second Motion to Review Detention Order on March 8, 2022. Pretrial Services again screened the Defendant and recommended detention. (Doc. 29.) Accordingly, the Defendant's second Motion was denied and Defendant was ordered to remain in custody. (Doc. 30.) Defendant filed the instant appeal, moving for review of the Magistrate Judge's Order Denying Release. (Doc. 31.) The Government opposes re-release contending that there are no conditions which would reasonably assure the Defendant's appearance. (Doc. 33.)

## II.    Legal Standard

A district court's review of a magistrate judge's detention order is de novo. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Bail Reform Act mandates the release of a person pending trial unless the court concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e). It is presumed that there are no such conditions if there is probable cause to believe that the defendant has violated a provision of the Controlled Substances Act or the Controlled Substances Import and Export Act punishable by at least 10 years in prison or the defendant has violated 18 U.S.C. 924(c) which, among other things, prohibits the possession of a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 3142(e)(3)(A)-(B). This presumption shifts the burden of production to the defendant, but the burden of persuasion remains with the Government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

As many circuits have articulated, the "defendant's burden of production is not heavy, [but] he must introduce at least *some* evidence." *U.S. v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (emphasis added; internal quotations omitted); *see also U.S. v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991) (same "some evidence" standard); *U.S. v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) (same); *U.S. v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (same). "[T]he defendant must proffer 'at least some evidence' or basis to conclude that the case falls 'outside 'the congressional paradigm' giving rise to the presumption." *U.S. v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018) (quoting *Stone*, 608 F.3d at 945-46).

If a defendant proffers evidence to rebut the presumption of dangerousness or flight risk, the Court then considers four factors in determining whether to detain or a release the defendant:

> (1) the nature and circumstances of the offense charged…;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

*Id.*; 18 U.S.C. § 3142(g)(1)(-4).

The government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). A finding that a person presents a danger to the community must be proved by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Any doubts about the propriety of release should be resolved in Defendant's favor. *Id.* at 1405. However, the presumption against release remains, even when rebutted, and is to be considered alongside all other relevant factors. *Hir*, 517 F.3d at 1086.

**III. Analysis**

The Bail Reform Act creates a rebuttable presumption that a defendant must be detained if there is probable cause to believe that he violated a provision of the Controlled Substances Act that is punishable by a maximum of 10 years or more or committed an offense under 18 U.S.C. 924(c), which includes the possession of a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 3142(e)(3)(A)-(B). A grand jury's indictment is sufficient to trigger this presumption. *See Kaley v. United States*, 571 U.S. 320, 328 (2014).

Here, probable cause exists based on the grand jury's indictment and Defendant's statements to law enforcement admitting to ordering the silencers, possessing a firearm and ammunition, and drug trafficking. (*See* Doc. 33 at 3; Doc. 9.) As such, the burden shifts to Defendant to proffer evidence to rebut the presumption of dangerousness or flight risk.

Defendant offers ties to Tucson through his immediate family and fiancée, his ability to return to a former job, and his assertion that "[w]hile prison is intimidating to other persons for fear of being sentenced to prison, the Defendant is not afraid of prison and is willing to accept the consequences if found guilty." (Doc. 31 at 2-3.) Though the Defendant has offered placement within the 90-day treatment program at CBI, he does not offer any evidence of where he may reside at the end of treatment and even notes that he is unable to live with his mother.[3] (*Id.*) Without explaining what history or characteristics he is referring to, Defendant claims that his "history and characteristics do not make it likely he will not appear for court." (Doc. 31 at 3.)

### A. Bail Reform Act Factors

#### 1. Nature and Circumstances of the Offense

Defendant is charged with: (1) Possession of Firearm and Ammunition by Convicted Felon pursuant to 18 U.S.C. §§ 922(g)(1), 924(a)(2); (2) Possession with Intent to Distribute Methamphetamine pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); (3) Possession with Intent to Distribute Fentanyl pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); and (4) Possessing Firearm in Furtherance of a Drug Trafficking Crime pursuant to 18 U.S.C. § 924(c). Each count involves either a controlled substance or a firearm, both serious crimes identified in 18 U.S.C. § 3142(g)(1).

The Court may consider the possible punishment and the incentive to flee associated with a defendant's criminal exposure. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (noting that the defendants faced a greater penalty after being charged with multiple counts with possible maximum sentences that could be served consecutively, which provided a greater incentive to consider flight). Here, the nature and circumstances

---

[3] The Court also notes that Defendant is also unable to live with his fiancée per the Pretrial Services Report. (Doc. 4 at 2.)

- 5 -

of the offense favor detention. The possible punishment provides an incentive to flee. Like the *Townsend* defendants who faced multiple charges, Defendant is also charged with multiple offenses with associated lengthy sentences.

The nature of the offenses is non-violent. *See* 18 U.S.C. § 16; *U.S. v. Twine*, 344 F.3d 987 (9th Cir. 2003) (holding that being a felon in possession of a firearm is not a crime of violence); *U.S. v. Arrellano-Rios*, 799 F.2d 520, 522-23 (9th Cir. 1986) (vacating Defendant's conviction on a count of using a firearm in connection with a crime of violence, with the crime of violence being possession of heroin with intent to distribute, because "narcotics offenses are not 'crimes of violence' within the meaning of [18 U.S.C. 924(c)]."). Accordingly, the Defendant points out that there are no allegations that the firearm was used, nor did Defendant threaten a person with the weapon to support the non-violent nature of the offenses. (Doc. 31 at 4.)

However, the circumstances indicate otherwise; the Government asserted that Defendant "admitted to possessing the firearm and ammunition found in his residence, which he obtained [] a week or two prior to protect the drugs" and "stated he carries the gun in his waistband when people come to buy pills from him." (Doc. 33 at 3.)

### 2. Weight of the Evidence Against Defendant

The weight of the evidence is the least important factor that the Court considers and is not a pretrial determination of guilt. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir.1985); *Townsend*, 897 F.2d at 994. Here, the Defendant, according to the Government, gave statements after waiving his *Miranda* rights wherein the Defendant admitted to possession of the firearms and ammunition. (Doc. 33 at 3.) Moreover, the firearms, ammunition, and drugs were seized from the Defendant's residence. (*Id.* at 2-3.) This factor weighs against Defendant.

### 3. History and Characteristics of Defendant

The Defendant is a 41-year-old man who has resided in Arizona since age 13. (Doc. 4 at 2.) He is a U.S. citizen, has never traveled outside the U.S., and does not possess a U.S. passport. (*Id.*) He previously lived with his fiancée in Tucson, Arizona; however, he has been evicted from that address due to his arrest in the instant matter. (*Id.*) Neither his

mother nor fiancée were willing or able to welcome the Defendant into their homes at this time. (*Id.*) The Defendant has not provided an address where could reside after treatment if he were released to CBI's 90-day treatment program. Additionally, Defendant states that he would have a job he could return to, but this was not corroborated by his mother. (*Id.*)

The Government argues that the Defendant's history and characteristics "strongly favor affirmation of the detention order." (Doc. 33 at 5.) First, the Government calls to attention Defendant's "lengthy and serious criminal history." (*Id.*) Defendant does not offer argument to dispute or mitigate his criminal history. (*See* Doc. 31 at 3-4.) Defendant's criminal history dates back to 2000. (Doc. 4 at 4.) Since then, the Defendant has been sentenced to a total of 8 years and 11 months of prison time and a total of 9 years of probation for the following crimes: Discharging Firearm at a Nonresidential Structure (7/30/2000); Disorderly Conduct (7/30/22); Fraudulent Schemes/Artifices (8/10/2004); Aggravated Assault with a Deadly Weapon/Dangerous Instrument (11/28/2007); Aggravated Assault of a Minor Under 15 (11/28/2007); Possession of A Deadly Weapon by Prohibited Possessor (8/8/2013); Possession of Weapon by Prohibited Person (4/6/2016); Prohibited Weapon Manufacturing/Possess/Sell (6/16/19). (*Id.* at 4-6.) Defendant has also had warrants issued and quashed for his failure to appear in several cases (*Id.* at 5-6 (issue dates: 6/4/2019, 6/25/19; 6/28/2019, 7/17/2019).)

Additionally, the Defendant has a history of noncompliance with court orders relating to drug use. In 2004, the Defendant, while on probation, used methamphetamines, failed to participate in drug treatment, and did not submit to drug testing. (Doc. 4 at 4.) In 2005, the Defendant, while on probation, failed to submit to drug/alcohol testing. (*Id.* at 5.) Indeed, Defendant has a long history of addiction and substance use that began at age 13. (Doc. 4 at 3-4.) This history includes daily use of methamphetamine, weekly use of heroin (ceasing 6 months before arrest), and daily use of fentanyl. (*Id.* at 3.) While at the CBI, the defendant was diagnosed with severe opioid use disorder, severe amphetamine use disorder, amphetamine induced psychotic disorder with moderate or severe use. (Doc. 14 at 2.)

Defendant's recent inpatient stay at CBI is indicative of Defendant's difficulty with

following through on substance use treatment. Defendant maintains that a second chance at treatment would be successful because this time, he would be placed under "zero-tolerance conditions" which would require him to "strictly abide by the rules and structure at CBI, or will not be allowed to remain at that facility." However, Defendant ignores that these are conditions that were already imposed by court order and he was already required to strictly abide by the rules and structure at CBI including a prohibition on substance use and following program requirements. (Doc. 12.)

In addition to substance use history, Defendant has a history with mental health difficulties. He reported anxiety and depression diagnoses in addition to multiple suicide attempts. (Doc. 4 at 3.) He ceased taking medication due to experiencing negative side effects. (*Id.*) His mother added that he has been diagnosed with Post Traumatic Stress Disorder, and Schizophrenia. (*Id.*)

This Court has recognized that the road to recovery is not linear and an individual that demonstrates a willingness to engage in treatment should be able to have the opportunity to get well. However, Defendant has not demonstrated such a willingness. He has no history of sobriety or actively engaging in treatment. (*See generally* Doc. 4.) Importantly, he did not meet any treatment milestones while at CBI the first time. Instead, only one month after being released to the facility, the Defendant was found with contraband at the facility. (Doc. 14 at 2.) Shortly thereafter, Defendant tested positive for amphetamine and methamphetamine. (*Id.* at 14; Doc. 29 at 2.)  Defendant offers no explanation nor argument explaining why a second attempt at treatment would yield different results. (*See generally* Doc. 31.)

In sum, Defendant has significant familial ties in this state, but is unable to show continuous employment or residence. He has significant criminal history including charges involving dangerous weapons. He has failed to appear on multiple occasions. He has a lengthy and significant history of substance use, but no associated periods of sobriety. He also has not previously actively engaged in treatment nor did he demonstrate progress during his most recent inpatient stay at CBI. Considered together, Defendant's history and characteristics weigh in favor of detention.

### 4. Dangerous Nature

The Government argues that Defendant poses a danger to the community that cannot be mitigated by any conditions of release. (*See generally* Doc. 33.) Congress was aware of the dangerousness of drug trafficking when passing the Bail Reform Act of 1984:

> The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.... The Committee also emphasizes that the risk a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community.

S.Rep. at 12-13, 1984 U.S. Code Cong. & Adm. News, 3195; *see also United States v. Bolivar*, 455 F. Supp. 3d 1165, 1170-71 (D.N.M. 2020). This danger has been recognized by courts which have denied pretrial release in fentanyl trafficking cases. *See, e.g.*, *United States v. Villot-Santiago*, 502 F. Supp. 3d 579, 580 (D. Mass. 2020); *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) ("It is beyond dispute that distributing narcotics is a serious offense that poses dire health risks to the community—and the risks associated with fentanyl specifically are even greater."). The Court agrees—where there is a serious danger that the defendant will continue to introduce drugs, violence, and disruptive behavior into the community, such a danger warrants detention. Therefore, "when determining whether to detain [the] defendant the court must, in essence, make a prediction as to whether [the] defendant is likely to traffic in illicit drugs if released pending trial based on, inter alia, the factors prescribed by the Bail Reform Act." *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007).

The degree of trafficking risk here pales in comparison to the cases that denied pretrial release in other cases involving intent to distribute narcotics. First, 40 grams of methamphetamine and 54 grams of fentanyl were found in Defendant's residence; this quantity falls below other cases that ordered detention based upon danger for continued trafficking. *See United States v. Medina-Bejar*, No. 2001157MJ001PHXJFM, 2020 WL 4462203, at *2 (D. Ariz. June 18, 2020) (40 pounds of methamphetamine (approximately 18,143.6948 grams)); *United States v. Terrones*, 712 F. Supp. 786, 788 (S.D. Cal. 1989)

(737 pounds of cocaine (approximately 334,297.576 grams)); *Villot-Santiago*, 502 F. Supp 3d at 580 (100 grams or more of heroin, 400 grams or more of fentanyl, 280 grams or more of cocaine base, and 500 grams or more of cocaine).

Second, while Defendant has a lengthy history of substance use, he has no known history of drug trafficking. *Contra United States v. Mahan*, 454 F. Supp. 3d 939, 941 (D. Idaho 2020) (detainee had been charged with, and convicted of, multiple serious crimes of violence and drug trafficking in a repeating pattern over 16 years). There is no showing that Defendant was engaged in any sort of organized or sophisticated drug-smuggling operation. *Contra United States v. Perez-Lugo*, 979 F. Supp. 2d 197, 199, 202 (D.P.R. 2013) (noting that drug traffickers with ties outside the U.S. have the resources to flee in case involving conspiracy to coordinate 19 drug transport operations); *United States v. Jones*, 804 F. Supp. 1081, 1089 (S.D. Ind. 1992) (sophisticated drug operation demonstrating knowledge of federal narcotics laws, drug delivers arranged through pager system, and false identities warranted detention).

While Defendant's alleged drug trafficking may not render him dangerous, it cannot be ignored that he was also found with a pistol and ammunition despite being a convicted felon. Defendant's history shows that he is willing and able to repeatedly gain possession of prohibited weapons. (Doc. 4 at 5-6.) His history also shows that he is willing and able to use these weapons in the commission of violent crimes. (*Id.* (aggravated assault with a deadly weapon, aggravated assault of a minor).) Dangerousness due to possession of weapons and history of violence supports detention. *See United States v. Torres*, 995 F.3d 695, 699 (9th Cir. 2021) (possessing two rounds of ammunition on him at the time of arrest and a history of assault with deadly weapon, prisoner in possession of a weapon, and possession of brass knuckles); *United States v. Villot-Santiago*, 502 F. Supp. 3d 579, 583 (D. Mass. 2020) (a significant amount of money was found in Villot-Santiago's bedroom together with a nearby loaded gun at the time of arrest); *United States v. Cox*, 449 F. Supp. 3d 958, 960 (D. Nev. 2020) (charged with armed bank robbery and with possessing a firearm during and in relation to a crime of violence).

The government argues that the Defendant's "propensity for dangerous crime

coupled with his substance abuse and mental health issues would put the safety of the public in jeopardy …." As discussed, Defendant's history of violent crime coupled with his demonstrated ability to procure weapons is cause for concern. However, there is no showing that Defendant is violent due to his substance use. In fact, none of the Defendant's prior convictions are associated with substance use. Similarly, there is no showing that the Defendant's mental health contributed to current or past allegations.

Balancing the dangerousness of trafficking 40 grams of methamphetamine and 54 grams of fentanyl with a history of possessing prohibited weapons and aggravated assault, the Court finds that this factor weighs in favor of detention.

### B. Conditions of Release

A person facing trial is entitled to release under the least restrictive conditions that will reasonably assure the appearance of the person and should only be denied in rare circumstances. *Motamedi*, 767 F.2d at 1405. Even in the presence of risk, a defendant must still be released if there are conditions of release that may be imposed to mitigate the flight risk or risk to the community. *See* 18 U.S.C. § 3142(e). Any doubts about the propriety of release should be resolved in Defendant's favor. *Motamedi*, 767 F.2d at 1405.

Four of the five most recent cases against the Defendant involve charges of failure to appear. (Doc. 4 at 5-6.) Warrants issued four times because of Defendant's failure to appear for court proceedings. (*Id.*) This history suggests a high risk of nonappearance.

This risk is mitigated by the nature of the CBI program—Defendant requests to be released into inpatient treatment. *Compare with United States v. Hir*, 517 F.3d 1081, 1092-93 (9th Cir. 2008) (noting that a critical flaw of proposed conditions of release were that they solely depended on the Defendant's own volition and good faith compliance). However, the CBI program is only 90-days in length. There is no clear showing what conditions would reasonably assure Defendant's appearance once he completed treatment nor what conditions would reasonably mitigate the risk to the community once released.

The immediate proposed conditions coupled with no plan for post-treatment support a conclusion that this factor weighs in favor of detention.

IV. Order

After a de novo review, the Court concludes the government has shown by a preponderance of the evidence that the Defendant poses a flight risk and has shown by clear and convincing evidence that the Defendant presents a risk to the community that cannot be mitigated by the proposed conditions of release. Accordingly,

**IT IS ORDERED DENYING** the Defendant's Motion for Review of Release Order (Doc. 31).

Dated this 7th day of April, 2022.

_____
Honorable John C. Hinderaker
United States District Judge